

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 30 2024

KEVIN R. WEIMER, Clerk
By: _____ Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA**

**Rodney O. Lewis,
Plaintiff,**

v.

**Heirway Christian Academy, Inc.,
Defendant.**

**1:24-CV- 4963**

**Civil Action No.:
EEOC Charge Number: 410-2024-07847**

---

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I. Jurisdiction and Venue

1. This action is brought under **Title VII of the Civil Rights Act of 1964, as amended** (42 U.S.C. § 2000e), which prohibits employment discrimination based on race, color, religion, sex, and national origin, as well as the **Age Discrimination in Employment Act (ADEA)**, which prohibits age-based discrimination against individuals 40 and older.
2. Jurisdiction is vested in this Court under **28 U.S.C. §§ 1331 and 1343(a)**, as this action arises from federal statutes. Venue is proper in this district under **28 U.S.C. § 1391(b)**, as the alleged acts of discrimination occurred within this district, where the Defendant operates.

### II. Parties

3. **Plaintiff:** Rodney O. Lewis, a resident of Douglasville, Georgia, was employed by Defendant as an Administrator at Heirway Christian Academy, Inc., at all times relevant to this action.
4. **Defendant:** Heirway Christian Academy, Inc., a private educational institution located in Douglasville, Georgia, meets the definition of an employer under Title VII and the ADEA, employing the requisite number of employees for federal coverage under both statutes.

### III. Exhaustion of Administrative Remedies

5. Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) on **July 12, 2024** (Charge No. 410-2024-07847), asserting racial and retaliatory discrimination in violation of Title VII and age discrimination under the ADEA.

6. On **August 13, 2024**, Plaintiff received a **Dismissal and Notice of Right to Sue**, with the EEOC indicating it would not pursue further investigation.
7. Plaintiff filed a timely request for reconsideration, providing additional evidence to support his claims. The EEOC declined, stating that further investigation would not likely disclose additional violations of the statutes.
8. On **August 13, 2024**, the EEOC formally notified Plaintiff of his right to file a lawsuit within 90 days of the dismissal.
9. Plaintiff has thus fully exhausted all required administrative remedies and now brings this action before the Court.

## IV. Factual Allegations

10. Plaintiff began his employment with Heirway Christian Academy, Inc., in **August 2022**, fulfilling the role of an Administrator with dedication and diligence.
11. On **December 11, 2023**, Plaintiff submitted a **resignation letter** due to a persistently hostile work environment marked by intolerance and clear alignment issues with Defendant's leadership. Defendant claims Plaintiff withdrew his resignation, which Plaintiff refutes, and no formal termination notice was issued.
12. Following the submission of his resignation, Plaintiff endured increased scrutiny, retaliatory actions, and treatment designed to provoke resignation by Defendant's leadership, primarily directed by **Mr. and Mrs. Thomas**. Retaliatory actions included:

- Exclusion from critical meetings
- Unwarranted reduction of essential job responsibilities
- Unilateral deactivation of Plaintiff's employee badge without notice, obstructing his ability to access necessary workspaces and perform his duties.

13. Plaintiff was excluded from a critical all-employee **Zoom meeting** during which Defendant announced the school's closure. This exclusion was retaliatory and directly tied to Plaintiff's protected activity.
14. As the only Black male Administrator, Plaintiff experienced **racial discrimination and disparate treatment**. White colleagues were not subjected to comparable actions.
15. Plaintiff was harmed further when **Mrs. Thomas provided incomplete information to a potential creditor**, harming Plaintiff's financial standing and violating the Fair Credit Reporting Act.
16. Plaintiff intends to call **Ms. Scott**, Head of School at Heirway Christian Academy, as a material witness. Ms. Scott possesses firsthand knowledge of the retaliatory actions and adverse treatment to which Plaintiff was subjected. Her knowledge includes:

- The reduction of Plaintiff's job responsibilities without cause
- Exclusion from important meetings, including the school's closure announcement
- Unannounced badge deactivation impacting Plaintiff's access to workspaces

17. Ms. Scott's presence during these events and her knowledge of internal communications, including emails and meeting records, will substantiate Plaintiff's claims of **racial discrimination, retaliation, and exclusion**.

## V. Legal Claims

### Count I: Race Discrimination (Title VII)

18. Defendant engaged in discriminatory practices by subjecting Plaintiff to **disparate treatment and creating a hostile work environment** on account of Plaintiff's race. This included unfair exclusion from responsibilities, meetings, and significant organizational activities not imposed on similarly situated white employees.

### Count II: Retaliation (Title VII)

19. Defendant retaliated against Plaintiff after he engaged in protected activity by filing a discrimination charge. Retaliatory acts included reducing job responsibilities, excluding Plaintiff from meetings, and maintaining an adverse work environment.

### Count III: Age Discrimination (ADEA)

20. Defendant unlawfully discriminated against Plaintiff on the basis of age by subjecting him to adverse employment actions without justifiable cause, which created a hostile and intimidating environment designed to compel resignation.

### Count IV: Defamation and Misrepresentation (Fair Credit Reporting Act Violation)

21. Defendant harmed Plaintiff's financial reputation by providing false and incomplete information to a potential creditor, violating the Fair Credit Reporting Act, and impeding Plaintiff's ability to secure credit.

## VI. Damages

22. As a direct result of Defendant's discriminatory, retaliatory, and defamatory actions, Plaintiff has sustained damages, including but not limited to:

- Emotional distress, including pain and suffering due to the hostile work environment and retaliatory conduct
- Lost wages due to exclusion from critical responsibilities and loss of career advancement
- Loss of professional reputation and career opportunities
- Financial harm resulting from Defendant's misrepresentation to a creditor

23. Plaintiff seeks the following relief:

- Compensatory Damages for emotional distress, pain, and suffering due to the discriminatory and retaliatory treatment experienced
- Back Pay, Front Pay, and Unemployment Pay following the school's closure in May 2024
- Punitive Damages to address Defendant's willful and malicious conduct in its discriminatory practices

- Court Fees and Costs associated with bringing this action
- Any additional relief the Court finds just and proper to address the significant harm endured by Plaintiff

## VII. Prayer for Relief

WHEREFORE, Plaintiff, Rodney O. Lewis, respectfully requests that this Court enter judgment in his favor against Defendant, **Heirway Christian Academy, Inc.**, and grant all the relief outlined above, or any other relief this Court deems appropriate under the circumstances.

**Date:** _____

**Rodney O. Lewis**
3753 Meridian Lane
Douglasville, GA 30135
404-729-1903
**Pro Se Plaintiff**

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Atlanta District Office**
100 Alabama Street, SW, Suite 4R30
Atlanta, GA 30303
1-800-669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 08/13/2024

**To:** Rodney Lewis
3753 Meridian Lane
Douglasville, GA 30135
Charge No: 410-2024-07847

EEOC Representative and email:    Reinaldo M. Sanchez
Federal Investigator
reinaldo.sanchez@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 410-2024-07847.

On behalf of the Commission,

Digitally Signed By:Darrell E. Graham
08/13/2024
Darrell E. Graham
District Director

**Cc:**
Patrick F. McKee, Esq.
Law Office of Patrick W. McKee, LLC
19 Spring Street
Newnan, GA 30263


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 410-2024-07847 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Darrell E. Graham, 100 Alabama Street, SW Suite 4R30, Atlanta, GA 30303.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 410-2024-07847 to the District Director at Darrell E. Graham, 100 Alabama Street, SW Suite 4R30, Atlanta, GA 30303.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

### "Regarded as" coverage

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Atlanta District Office**

100 Alabama Street, SW, Suite 4R30
Atlanta, GA 30303
Intake Information Group: 800-669-4000
Intake Information Group TTY: 800-669-6820
Atlanta Direct Dial: (470) 531-4760
FAX (404) 562-6909/6910
Website: www.eeoc.gov

August 13, 2024

Rodney Lewis
3753 Meridian Lane
Douglasville, GA 30135

      Re:    Rodney Lewis v. Heirway Christian Academy, Inc.
             EEOC Charge Number:  410-2024-07847

Dear Mr. Lewis:

In your EEOC charge, you alleged you were retaliated against, subjected to different terms and conditions, and paid less and different treatment because of your race in violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII). Also, you alleged you were retaliated against because of your disability in violation of Title I of the Americans with Disabilities Act of 1990, as amended (ADA).

The evidence we have gathered shows that Respondent hired you as a basketball coach and teacher in August 2022. Later, you were promoted to Athletic Director and Head of Maintenance, as well as Basketball Coach and Teacher. There is no evidence that you were paid less than the White coworkers. You failed to provide evidence that you were treated differently because of your race. Also, there is no evidence that you were retaliated against because of your race or for attending medical appointments. On December 11, 2023, you informed Respondent of your intentions to resign from your positions. You failed to provide evidence that Respondent counseled you because you were taking leave for your medical appointment. Also, the evidence provided does not suggest that you were subjected to different terms and conditions because of your race. Therefore, the EEOC finds no Title VII or ADA violations.

After a careful and through review of your correspondence and the existing file material, it is not likely that further investigation would yield evidence sufficient to show that a violation occurred.  Therefore, it has been determined that no further action is warranted, and your charge will be dismissed. The EEOC will issue you a notice of Dismissal and Notice of Rights, and it will be available in the portal, which will allow you to pursue your claims further by filing a private lawsuit within ninety (90) days of receipt of the Notice. If you have any questions, you may contact me at reinaldo.sanchez@eeoc.gov.

Sincerely,

*Reinaldo M. Sanchez*

Reinaldo M. Sanchez
Federal Investigator

 Gmail

Coach Lewis <lewissportsacademy@gmail.com>

## Rodney Lewis vs. Heirway Christian Academy
2 messages

**RL3** <lewissportsacademy@gmail.com>                                    Fri, Sep 6, 2024 at 4:01 PM
To: REINALDO.SANCHEZ@eeoc.gov
Cc: Tracy Lewis <ttmlewis2009@gmail.com>

Hello - I am writing to express my disappointment in the determination regarding my charge of discrimination against Heirway Christian Academy. While I understand the EEOC's decision to close the investigation and issue a Notice of Right to Sue, I am disheartened by the lack of a thorough investigation into the claims I presented.

The determination indicates that the EEOC has not concluded whether violations of the statute occurred, and it acknowledges that this decision does not imply the claims have no merit. Given the seriousness of the discrimination I have faced, I had hoped for a more in-depth examination of the evidence I provided, as well as an opportunity for further dialogue regarding the impact these actions have had on my livelihood and well-being.

It is disconcerting that no findings were made with respect to the merits of my charge, despite the clear details and documentation submitted. I believe a more comprehensive investigation was warranted, especially considering the potential legal and ethical violations involved.

While I will pursue my right to sue within the 90-day period, I feel compelled to voice my dissatisfaction with the process. I had trusted the EEOC to act as an advocate for justice, and I am disappointed that this process did not provide the thorough review my case deserved.

If there is any possibility of reconsideration or further clarification of the reasoning behind this decision, I would appreciate it greatly.

Thank you for your time and consideration.

Sincerely,
Rodney O. Lewis
4047291903

---

**REINALDO SANCHEZ** <REINALDO.SANCHEZ@eeoc.gov>                         Mon, Sep 9, 2024 at 8:08 AM
To: RL3 <lewissportsacademy@gmail.com>

Dear Mr. Lewis,

If you wish to request reconsideration you can send a letter to the Director of the Atlanta District Office at:

Darrell E. Graham, Director

U.S. EEOC

100 Alabama St, Ste 4R30

Atlanta, GA 30303


Regards,




**From:** RL3 <lewissportsacademy@gmail.com>
**Sent:** Friday, September 6, 2024 4:02 PM
**To:** REINALDO SANCHEZ <REINALDO.SANCHEZ@EEOC.GOV>
**Cc:** Tracy Lewis <ttmlewis2009@gmail.com>
**Subject:** Rodney Lewis vs. Heirway Christian Academy


You don't often get email from lewissportsacademy@gmail.com. Learn why this is important


**CAUTION:** The sender of this message is external to the EEOC network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to phishing@eeoc.gov.

[Quoted text hidden]



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Atlanta District Office**

100 Alabama Street, SW, Suite 4R30
Atlanta, GA 30303
Intake Information Group: 800-669-4000
Intake Information Group TTY: 800-669-6820
Atlanta Direct Dial: (470) 531-4760
FAX (404) 562-6909/6910
Website: www.eeoc.gov

September 24, 2024

**SENT VIA EMAIL ONLY** (Lewissportsacademy@gmail.com)

Rodney Lewis
3753 Meridian Lane
Douglasville, GA 30135

> RE: Lewis v. Heirway Christian Academy, Inc.
> EEOC Charge No. 410-2024-07847

Dear Mr. Lewis:

This is in response to your correspondence regarding the above-referenced charge.

A review of our records indicates that a Dismissal and Notice of Right to Sue for the above-referenced charge was issued on August 13, 2024. While we fully understand that the parties to a charge often have firm views that the available evidence supports their respective positions, our final determination must comport with our interpretation of the available evidence.

Your charge was carefully considered before a final determination was made. There appeared to be no indications that further investigation would disclose a violation of one of the statutes enforced by the Commission.

The final dismissal notice you received described your right to pursue the matter in court by filing a lawsuit within 90 days of your receipt of the dismissal notice. This 90-day period for filing a private lawsuit cannot be waived, extended, or restored by the EEOC.

We hope this information is helpful to you.

Sincerely,

Darrell E. Graham
District Director
Atlanta District Office

July 12, 2024

U.S. Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama Street, SW
Suite 4R30
Atlanta, GA 30303

RE: Charge of Discrimination No. 410-2024-07847

I write to address the position statement submitted by Heirway Christian Academy Inc. in response to my charge of employment discrimination. The Academy's submission is riddled with falsehoods and misrepresentations that aim to obscure the truth and undermine my legitimate claims. I assert that Heirway engaged in discriminatory practices and retaliatory actions against me in violation of Title VII of the Civil Rights Act of 1964.

**False Assertions and Misleading Statements**

**Resignation Submission:** Contrary to Heirway's claims, I submitted a resignation letter on December 11, 2023, citing intolerance and misalignment. At no point did I withdraw this resignation. Heirway's assertion that I did so is a blatant fabrication intended to mislead the EEOC.

**Employment Status:** I was never terminated by Heirway Christian Academy. My employment concluded at the end of the school year, based on my submitted resignation. No formal notice of termination was ever issued to me. The claim that I withdrew my resignation is false and deceitful, intended to undermine the legitimacy of my discrimination claims.

**Adverse Employment Actions and Retaliation**

**Discriminatory Treatment:** After my resignation in December 2023, Mr. Thomas subjected me to increased scrutiny and unreasonable demands not imposed on my colleagues. This intensified after I reported discrimination, clearly indicating retaliatory motives. Heirway's claim that I did not experience adverse employment actions is false. These actions were direct retaliation for my discrimination complaint, which is prohibited under Title VII.

**Specific Incidents Illustrating Retaliation:**

**Treatment by Mr. and Mrs. Thomas:** Since December 2023, Mr. and Mrs. Thomas have treated me with blatant disregard. They avoided face-to-face communication, excluded me from meetings, and neglected direct interaction regarding school matters, thereby fostering a hostile work environment.

**Reduction of Responsibilities:** On February 26, 2024, the Head of School, Ms. Scott, informed me that Mr. Thomas directed her to strip me of several key responsibilities without any explanation or cause. This action was clearly part of a personal vendetta against me. Throughout my tenure at Heirway Christian Academy, I never received a performance review, making these unjustified reductions even more unjust and highlighting the retaliatory and discriminatory nature of their actions.

**Exclusion from Critical Communication:** As an Administrator at Heirway Christian Academy, I was deliberately excluded from an all-employee Zoom call where the school's closure was announced. This exclusion, a clear act of discrimination and retaliation, prevented me from receiving important information and was a deliberate attempt to undermine my role and authority.

**Deactivation of Employee Badge:** In mid-April 2024, my employee badge was deactivated without notice, preventing my weekend access to the school and causing distress. Despite my attempts to seek clarification from Mrs. Thomas, I received no communication or justification for this action. This unjustified measure was clearly intended to obstruct my duties.

**Defamation and Misrepresentation**

**Negative Statements to Creditors:** Heirway's assertion that negative statements to a potential creditor are irrelevant is incorrect. Mrs. Thomas provided incomplete information on a mortgage loan employee verification form, omitting the school's impending closure and my resignation. This omission misled the creditor and damaged my credibility and financial stability. According to the Fair Credit Reporting Act (FCRA), employers must ensure that the information they provide about current or former employees is accurate and complete. Mrs. Thomas's actions did not comply with these legal standards, resulting in an unfair portrayal of my professional situation.

**Addressing False Claims**

**Attendance Policy:** Heirway's claims regarding my alleged disregard for the attendance policy are completely baseless. Every day off I took was properly approved by the Head of School, Ms. Scott, and the School Secretary, Ms. Joy, in full accordance with established protocols. These unfounded accusations are a clear and calculated attempt to misrepresent my professional conduct and damage my future employment prospects. By falsely portraying me as someone who disregards institutional policies, Heirway is deliberately trying to harm my credibility and financial standing. This is yet another blatant example of the discriminatory and retaliatory environment perpetuated by Mrs. Thomas, CEO of Heirway Christian Academy.

**Unsubstantiated Claims and Investigation**

**Salary Discrepancy:** The claim that I was not paid less than my white colleagues are entirely untrue. Despite shouldering significant responsibilities and duties, my compensation did not align with the workload I managed, highlighting discriminatory practices. This clear pay disparity underscores the presence of discriminatory employment practices at Heirway Christian Academy.

**Retaliation:** Under Title VII, retaliation against an employee for filing a discrimination complaint is explicitly prohibited. Following my complaint, I endured a heightened level of scrutiny, exclusion from critical meetings, and malicious gossip aimed at tarnishing my reputation among colleagues and within the broader Douglasville community. Additionally, there was a deliberate attempt to undermine my credibility with unsolicited negative statements to potential creditors. These actions created a hostile work environment and are unmistakable forms of retaliation. Heirway Christian Academy's behavior constitutes clear and unlawful retaliation for my discrimination complaint.

**Evidence of Discrimination**

**Supporting Evidence:** I provided multiple instances of discriminatory behavior from Mr. Thomas, reported both verbally and in writing. The administration dismissed my claims without proper investigation, failing to create a safe environment for employees to support my assertions. Under Title VII, employers are legally required to investigate employment discrimination complaints thoroughly and in good faith.

**Communications with Mr. Thomas:** Mrs. Thomas was fully aware of Mr. Thomas's disrespectful and unprofessional behavior towards me but failed to take any appropriate action. Despite my repeated complaints and documented incidents, she chose to ignore the issue. I am including several communications as evidence to substantiate my claims.

**Employee Rights for Those 50 or Older in Georgia:** Employees aged 50 or older in Georgia are entitled to protection from discrimination under the Age Discrimination in Employment Act (ADEA). Employers must demonstrate the highest level of professional integrity in their daily business activities on behalf of the citizens of Georgia.

**Differential Treatment and Isolation:** Unlike my colleagues and other Administrators, I, as the only Black male at Heirway Christian Academy, was subjected to discriminatory treatment, isolation, and a profound lack of respect from the Thomases. While other employees were included in vital communications and meetings, I was deliberately excluded, signaling a clear racial bias. My responsibilities were unjustly reduced without any explanation, and I was treated as invisible, with the Thomases avoiding all direct communication with me. This differential treatment underscores the racial discrimination I faced, highlighting the pervasive and unjust environment fostered by Heirway Christian Academy.

**Lack of Respect and Witness Accounts:** As the only Black male at Heirway, and considering the numerous roles I fulfilled, I deserved better treatment from the CEO. The Thomases consistently displayed a lack of respect towards me, often refusing to speak to me at Heirway events. Many of my colleagues witnessed this behavior, and several supported me privately, acknowledging the unjust treatment I received. This stark contrast in treatment created a hostile work environment and underscores the discriminatory practices at Heirway. The disregard and disrespect I faced are clear indicators of the racial bias present within the institution.

**Emotional Distress and Professional Impact**

Mr. Thomas, who acted as my supervisor, did so remotely and was never onsite. Consequently, he had no direct insight into my performance and relied solely on his opinion. This situation was inherently unfair from the beginning. I was promoted and placed in roles aimed at supporting the school's objective of increasing minority representation, yet I faced discriminatory treatment and baseless evaluations from someone who had no firsthand knowledge of my work or direct results.

The discriminatory treatment I endured at Heirway inflicted profound emotional distress, affecting every aspect of my life. I frequently sought solace and advice from my family, friends, colleagues, and even parents of students at Heirway Christian Academy. Initially, I underestimated the full extent of the anguish I was subjected to, but its toll became increasingly apparent as I struggled through these challenging circumstances.

In closing, Heirway's statements are laden with falsehoods and intentional misrepresentations. The well-documented discrimination I faced stands in stark contrast to their baseless claims. I trust that the EEOC will meticulously scrutinize these discrepancies and initiate a thorough investigation. I steadfastly affirm that Heirway Christian Academy systematically engaged in racial discrimination against me and retaliated for my courageous stand. I insist on a rigorous inquiry to unearth the truth and ensure justice prevails.

Enclosed are a few names and titles of colleagues and teachers who can provide crucial insights into Heirway's discriminatory practices. I welcome EEOC to contact each staff member at Heirway Christian Academy in relation to my character and my employee behavior while being an Administrator at Heirway. Furthermore, I have attached documents from Ms. Scott, the Head of School, corroborating my experiences and offering essential context. I urge the EEOC to recognize these falsehoods as part of Heirway Christian Academy's broader pattern of discriminatory and retaliatory conduct.

Sincerely,

Rodney O. Lewis
4047291903

July 10, 2024

To: Mr. Rodney L Lewis
From: Mrs. Valerie Hardaway Scott, Former Head of School at
Heirway Christian Academy
Re: Letter presented by McKee Law on the behalf of Heirway Christian Academy/
Mr. Rodney L Lewis's EEOC charge against Heirway Christian Academy

I, Valerie Hardaway Scott was hired as the Head of School for Heirway Christian Academy in May 2022 with an effective start date of June 1, 2022. At some point in June, Mr. Tim Thomas, the Chief Advisor of Heirway introduced me to Mr. Rodney Lewis, the new head of basketball operations as well as a teacher in the Elementary, Middle, and High School. From the time I was introduced to Mr. Lewis, my impression of the dynamics between him and Mr. Thomas appeared very positive. I don't recall there being any conflicts between Mr. Lewis and Mr. Thomas during Mr. Lewis's first year at Heirway. I was looking forward to working with Mr. Lewis and conveyed this to him during the occasion of our first meeting. As time progressed, Mr. Lewis and I developed a mutual and amicable work relationship.

For the 2023 – 2024 school year, Mr. Lewis was promoted to the Athletic Director and Facility Manager while maintaining his role as a classroom teacher for the elementary school, middle and high schools. The organizational structure of Heirway consisted of two individuals in supervisory positions. Moreover, these individuals were also a part of an administrative team which included the Head of School and the President/CEO of Heirway (Mrs. Beth Thomas). Additional admin personnel included the bookkeeper, and Office Administrator. However, the last two individual's roles did not include supervisory responsibilities. Moreover, under the organizational structure of Heirway, Mr. Lewis' roles fell under my direct supervision. At the beginning of the 2023 school term Mr. Thomas asked me if he could supervise Mr. Lewis as it pertained to his athletics roles as well as that of the facility director. However, as a classroom teacher, Mr. Lewis was to remain accountable to my leadership. As far as I was aware, everything was working well with Mr. Lewis in his respective roles. In fact, initially, Mrs. Thomas expressed to me her satisfaction with Coach Lewis' overall performance in his various roles and often compared him to the previous employee who held these roles; specifically, as the Athletic Director and Facilities Director. She stated that, "Coach Lewis is doing a much better job than.........".

When it was time to schedule the first Board meeting for the current school year of 2023 –2024, contrary to what was outlined in the handbook of Heirway Christian Academy, I noticed that Mr. Lewis was not an active participant on the Board. When I brought this to Mr. Thomas' attention, he expressed that he wished for the previous athletic director to remain on the board. Though I do not recall his reasoning for not wanting Mr. Lewis to participate, given that his decision was not in alignment with the policy and guidelines of the Board, I thought this was highly unusual. Subsequently, Mr. Lewis was not a part of the board during the school year of 2023 -2024. As time progressed, Mr. Thomas began to express some concerns about Mr. Lewis' job performance to me. He talked about Mr. Lewis' ineffectiveness and how this was creating undue stress for him. Mr. Thomas expressed that he was always "babysitting" Mr. Lewis. Communications between the two men began to deteriorate. Consequently, Mr. Lewis felt he

was not being allowed to do his job as he knew that he was capable and became increasingly frustrated. He conveyed to Mr. Thomas that he felt he was being micromanaged, which by created an uncomfortable work environment for him.

Eventually, in December 2023, Mr. Lewis submitted a letter of resignation to me and cc'd the Thomases. This letter informed us that he would not be returning to Heirway Christian Academy for the school year of 2024 -2025. He included many details but primarily expressed his dissatisfaction at the way that he was being mistreated by Mr. Thomas.

Based on my conversations with each of these men, the issues between the two of them were escalating and the hostility was coming primarily from Mr. Thomas. From what Mr. Lewis expressed, Mr. Thomas had **never** attempted to communicate his concerns to him one-on-one. On an occasion, I reached out to Mr. Thomas to ask if he would attempt to resolve his issues with Mr. Lewis because I felt that this conflict could have an adverse effect on the organization, and I didn't want this to happen. But most importantly, Mr. Lewis deserved to hear from Mr. Thomas. Also, I didn't want to be placed in the middle of any conflicts between Mr. Lewis and Mr. Thomas because I had a good relationship with each of them and desired to maintain positive and healthy relationships with each of them. Gradually, Mr. Thomas's concerns grew to a place where he no longer wanted to communicate with Mr. Lewis. I had to meet with Mr. Lewis at the directive of Mr. Thomas to inform him of things that Mr. Thomas asked me to convey that he wasn't satisfied with as it pertains to Mr. Lewis's job performance.

Once upon having a meeting with Mr. Lewis to inform him of things that Mr. Thomas wasn't satisfied with, Mr. Lewis reached out to Mrs. Thomas requesting that she investigate the behavior of Mr. Thomas with hopes that he would discontinue what Mr. Lewis perceived as harsh mistreatment of him in the work environment. As mentioned above, I reached out to Mr. Thomas to recommend that he try to resolve the conflict between he and Mr. Lewis. His response was to say that "'It wouldn't be necessary because he had done nothing wrong to Mr. Lewis." As the Head of School, the situation between the Thomas' and Mr. Lewis became rather uncomfortable for me, as they were not attempting to communicate with Mr. Lewis in a civil or Christian manner to seek resolution to their concerns and dissatisfaction with Mr. Lewis's job performances. In fact, Mr. Thomas decided to cut off all communications with Mr. Lewis and put me back in charge of supervising all of Mr. Lewis's responsibilities.

Prior to March 2024, Mr. Lewis was the only employee that Mr. Thomas had any personal issues with. In February 2024, things appeared to grow aggressively negative toward Mr. Lewis by the Thomas'. Mr. Lewis attempted to express to Mrs. Thomas that Mr. Thomas' behavior toward him was growing more antagonistic and expressed that he was no longer willing to work under such dire circumstances. Mr. Lewis requested that Mrs. Thomas investigate the actions of Mr. Thomas toward him or else he would have to seek counsel outside of Heirway to rectify the situation until of end of his contract in May 2024.

Mr. Lewis felt that both Mr. and Mrs. Thomas's attitude and actions toward him were increasingly indicative of disrespectfulness, dismissiveness, harassment, pettiness, and vindictiveness; all the epitome of meanness and cruelty, especially in an environment that emphasized Christian unity and acceptance. I tend to agree with Mr. Lewis' assessment of the Thomas' treatment toward him, given that there was no attempt on the part of Mr. or Mrs.

Thomas to seek an understanding with Mr. Lewis for the purpose of reconciliation and healing as this situation was impacting Mr. Lewis rather adversely.

It goes without saying that Mr. Lewis was treated differently by Mr. and Mrs. Thomas from the other employees because Mr. Lewis was forced to make a choice to bring to the attention of Mr. and Mrs. Thomas their behavior which Mr. Lewis deemed unnecessary, inappropriate, and unwarranted. Furthermore, Mr. Lewis' decision to confront Mr. and Mrs. Thomas was not done out of malice, rather, the need to protect his character and reputation. In my opinion, due to the lack of maturity in character and business ethics on the part of Mr. and Mrs. Thomas, Mr. Lewis' confrontation of Mr. Thomas' behavior became a challenge to them, resulting in retaliation as well as other negative behavior indicated in this correspondence. I spent a great deal of time listening to Mr. Lewis as well as trying to provide support to him during this difficult time. Also, I had the opportunity to observe his responses to the negativity that he received explicitly from the Thomas, almost daily for almost four months, and in his behavior, Mr. Lewis, continued to consistently demonstrate professionalism, maturity, and Christian grace.

In closing, it saddens me that I share such a personal observation of a man with whom I once shared a wonderful relationship. When Mr. Thomas introduced me to Mr. Lewis in June of 2022, he disclosed to Mr. Lewis of our close connection over a period of twenty - five years. He also shared the intimate detail that I had sung with him at his wedding. Subsequently, I believe it became apparent to Mr. Lewis of the value and respect that Mr. Thomas and I had for each other. Unfortunately, in March 20024, I was exposed to a side of Mr. Thomas that further validates and confirms my observations of his treatment of Mr. Lewis as it unfortunately became 'my turn.' I was treated in the very same manner as Mr. Lewis.

Like Mr. Lewis, I had to confront Mr. Thomas regarding my perceptions of his negative and disrespectful behavior towards me, which resulted in my experiencing emotional trauma. I loved and valued my connection with Tim Thomas. Consequently, I do not share these things to be vindictive as seems the case with Mr. and Mrs. Thomas, whose behavior toward me has been as negatively impactful as for Mr. Lewis. I am thankful that, I have learned from this experience with the Thomases and, through my unwavering faith along with a wonderful support system of family and friends, I am moving forward with a newfound perspective and a determination to not allow the actions and behaviors I experienced to unduly influence my perspective on all people. I feel most comfortable with my truth of what I experienced at Heirway concerning the Thomaes's behavior toward Mr. Lewis. Therefore, I am confident that sharing what I know is true with the appropriate individuals it is the right thing to do. Moreover, I feel that the Thomases should be held accountable for the way they treated Mr. Lewis, those before Mr. Lewis and others after. Perhaps this charge that Mr. Lewis has filed with the EEOC will produce such an outcome.

Sincerely,
Mrs. Valerie Joyce Hardaway Scott
Former Head of School/ Heirway Christian Academy

# McKEE LAW

## ATLANTA 1977

Patrick W. McKee                    Direct Dial: 770-683-8900        Email: pwmckee@mckeelaw.com
Patrick F. McKee                    Direct Dial: 404-577-8300        Email: pfmckee@mckeelaw.com

May 24, 2024

**VIA EMAIL**

U.S. Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama Street, SW
Suite 4R30
Atlanta, GA 30303

> RE:    Charge of Discrimination No. 410-2024-07847
>        Rodney Lewis, Charging Party
>        Heirway Christian Academy Inc., Respondent

Please be advised that I represent Heirway Christian Academy Inc. ("Heirway"), Respondent to the above-referenced charge. Please accept this letter as the position statement of Heirway's in response to the charge of discrimination filed by Rodney Lewis ("Lewis").

I.      Summary of the Relevant Facts

        A.      Heirway and its Workforce

Heirway is a K-4 through 12 private Christian school located in Douglasville, Georgia. Heirway is fully accredited by the Georgia Accrediting Commission (G.A.C.). Heirway Seniors receive HOPE scholarships and full recognition of Georgia Board of Regents for admission to colleges and universities. In the academic year 2023-2024, Heirway employed 18 faculty and staff, five (5) of which were African Americans.

Heirway is directly governed by a Board of Education, which includes Heirway's Head of School, Chief Advisor, President/CEO and Athletic Department Director. The regular Board of Education meetings are monthly. Elected representatives from the student body will be invited to attend the opening session of Board of Education meetings to present their concerns and to address issues pertinent to them. The Board of Education is responsible for the ongoing operation and policies of the total school program. The Head of School is responsible for the day-to-day administration of the Academy subject to oversight by the Board of Education.

Heirway hired Lewis as varsity basketball coach and teacher in August 2022. For the academic year 2023-2024, Heirway promoted Lewis to Athletic Director, in addition to taking on the role as head of maintenance and continuing his roles as varsity basketball coach and teacher. Lewis is the third highest paid faculty member of Heirway behind Beth Thomas, President/CEO, and Valerie Scott, Head of School. After Thomas, Heirway's top two paid employees are African Americans.

# McKEE LAW

## ATLANTA 1977

B.    Lewis' Employment Action

On May 8, 2024, Heirway was notified of Lewis' charge of discrimination by the U.S. Equal Employment Opportunity Commission ("EEOC"). Lewis alleges that Heirway discriminated against him beginning in October 29, 2023 through April 29, 2024. Additionally, Lewis states that he was paid less than "[his] White coworkers." Lewis submitted a resignation letter in December 2023, citing discrimination, that was later withdrawn. Lewis claims that after submitting his notice of resignation, he was subjected to "different terms and conditions of employment." Lewis further states that Heirway made "unsolicited negative statements" on a loan application from a potential creditor.

On May 10, 2024, Thomas transmitted notice to Lewis via email terminating his employment with Heirway immediately. Heirway agreed to continue to compensate Lewis through the expiration of his contract on May 30, 2024, should Lewis return all school property in his possession and remove personal effects from Heirway's premises.

II.    Analysis of the Claim

On the facts and the law Lewis cannot make a *prima facie* case of race discrimination. Courts apply the *McDonnell Douglas* burden-shifting framework to evaluate Title VII and § 1983 claims reliant on circumstantial evidence. *Keaton v. Cobb Cnty.*, 545 F. Supp. 2d 1275, 1289 (N.D. Ga. 2008), aff'd sub nom. *Keaton v. Cobb Cnty.*, GA, No. 08-11220, 2009 WL 212097 (11th Cir. Jan. 30, 2009) (citing *Koch v. Rugg*, 221 F.3d 1283, 1297 (11th Cir.2000)). Under the *McDonnell Douglas* framework, a plaintiff asserting a race discrimination claim under either statute must show that: (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly-situated employees outside her class more favorably. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817.

Lewis fails to allege that he was subject to an adverse employment action.[1] Lewis' allegation of discrimination can be assumed to relate to Lewis' claims that working under the direction of Tim Thomas, Chief Advisor, was "profoundly exhausting and mentally draining."[2] The Eleventh Circuit and the majority of courts have found that "criticisms of an employee's job performance—written or oral—that do not lead to tangible job consequences will rarely form a permissible predicate for a Title VII suit." *Medearis v. CVS Pharmacy*, 92 F. Supp. 3d 1294, 1312 (N.D. Ga. 2015), aff'd sub nom. *Medearis v. CVS Pharmacy, Inc.*, 646 F. App'x 891 (11th Cir. 2016) (citing *Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1241 (11th Cir. 2001)). "[N]umerous courts have concluded that '[v]erbal reprimands and threats of termination do not constitute adverse employment actions.' *Id.* (citing *Mistretta v. Volusia County Dep't of Corrections*, 61 F.Supp.2d 1255, 1260 (M.D.Fla.1999)).

Moreover, "unsolicited negative statements" to a potential creditor have no bearing on Lewis' employment. Lewis' claim that he began to take medical leave in February 2024 is not factual.

---

[1] Lewis' May 8, 2024 EEOC filing preceded his termination on May 10, 2024.

[2] Lewis Email "Re: Ongoing Concerns at Heirway Christian Academy...", May 9, 2024.

# McKEE LAW

### ATLANTA 1977

Lewis was repeatedly notified by the school that his absences over the allotted five (5) per academic year were in violation of his contract. Lewis never submitted requests for medical leave Heirway and his absences were unapproved.

Lewis' claim that he was paid less than his white coworkers is verifiably false. The only higher paid white employee at Heirway is Beth Thomas, President/CEO.

Lewis also fails to establish a prima facie case of race discrimination "with a convincing mosaic of circumstantial evidence that would allow a reasonable jury to infer or find intentional racial discrimination in an adverse employment action." *Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1336 (11th Cir. 2024) (citing *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023)). Among other things, a plaintiff may establish a convincing mosaic with evidence of "(1) suspicious timing, ambiguous statements ..., and other bits and pieces from which an inference of discriminatory intent might be drawn [;] (2) systematically better treatment of similarly-situated employees [;] and (3) that the employer's justification is pretextual." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) ("*Lewis II*") (internal quotation marks and citation omitted). Lewis, however, fails to submit any evidence whatsoever related to race discrimination. In fact, when Lewis raised the alleged discrimination to Heirway, Lewis failed to submit a single letter in support of his claims when the school promised an investigation should Lewis be able to produce a letter affirming his claims from any other employee of the school.

III.    Conclusion

Neither the facts nor the law support Lewis' charge of discrimination. The charge must be dismissed.

Sincerely,

/s/ Patrick F. McKee
PATRICK F. McKEE
GA Bar No. 910631

McKee Law
19 Spring St.
Newnan, GA 30263
770-683-8900
pfmckee@mckeelaw.com

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br><br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br><br>EEOC | Agency(ies) Charge No(s):<br><br>**410-2024-07847** |
|---|---|---|
| | | and EEOC |

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.)<br><br>Rodney Lewis | Home Phone<br><br>(404) 729-1903 | Year of Birth<br><br>1968 |
|---|---|---|

Street Address

3753 Meridian Lane

Douglasville, GA 30135

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br><br>HEIRWAY CHRISTIAN ACADEMY INC | No. Employees, Members<br><br>15 - 100 Employees | Phone No.<br><br>(770) 489-4392 |
|---|---|---|

Street Address

5758 W SPRING ST

DOUGLASVILLE, GA 30134

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

Street Address                    City, State and ZIP Code

| DISCRIMINATION BASED ON<br><br>Disability, Race, Retaliation | DATE(S) DISCRIMINATION TOOK PLACE<br><br>Earliest            Latest<br>10/29/2023            04/29 2024 |
|---|---|

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by the above-named employer on or about August 04, 2022, as a Teacher. I am currently the Athletic Director in addition to being a Teacher. Shortly after I was hired, I noticed the difference in treatment of African American employees. I also learned that I was paid less than my White coworkers. In or around December 2023, I complained of discrimination in my resignation notice. My resignation notice would be effective May 2024. Since that time, I have been subjected to different terms and conditions of employment. In or around February 2024, I complained of discrimination once again. In or around February 2024, I began to take leave to attend medical appointments. My employer counseled me regarding leave and made unsolicited negative statements in my employment verification request sent from a potential creditor.

No explanation was given for the treatment that I have received.

I believe that I have been discriminated against because of my race (African American), in violation of Title VII of the Civil Rights Act of 1964, as amended. I also believe that I have been retaliated against for opposing unlawful employment practices, also in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| <br>_____<br>Date                    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

CP Enclosure with EEOC Form 5 (11 09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# Heirway Christian Academy (Employees Contact)

*Head of School (Ms. Scott) 404-824-1868

Secretary of School (Ms. Joy) 470-488-5693

Finance Department (Ms. Barnes) 770-853-0674

*Ms. Scott or Ms. Joy can provide teacher's & staff contact information to support your investigation.

 Gmail                                    **Coach Lewis <lewissportsacademy@gmail.com>**

---

**(no subject)**
2 messages

---

**+14047291903@tmomail.net** <+14047291903@tmomail.net>              Thu, Apr 18, 2024 at 6:17 PM
To: lewissportsacademy@gmail.com

---

⊦← **New conversation**

Heather Grant - Loan Officer    +

Good morning I wanted
to alert you when we did
employment verification
your job send this back. I
wanted you to be aware
MMS 10:24 AM

Thx you for sharing...

The folks are upset
I gave my letter of
resignation in December
to not return.

Not to mention, recent
announcement (The
school is closing after
May).

10:26 ⌄

          |



← New conversation

Heather Grant - Loan Officer    +

Ok ✅ got explains it
10:27 AM

Are you able to inquire as to why Heirway wouldn't re-hire me?

Note: I have already provided a letter of poor work environment and a host of other poor bullet points surrounding the school.

Letter went to the CEO in January... Any further information would be helpful to me. Thanks.
10:50

I← **New conversation**

Heather Grant - Loan Officer    +

Wow...

Never received any form of disproval or employee notice for taking days off.

Each day I was off from work I received approval from Head of School.

10:58 AM

Yes that's why I want you to know. Never got anyone send back a reply like this before.

10:59 AM



I am 55 years of age



|← **New conversation**

Heather Grant - Loan Officer    +

10:59 AM

I am 55 years of age and racism, jealousy & envy for being a Black successful Man is what I experienced at Heirway...

Thanks for sharing...

11:04 AM

You deserve better - Probally a blessing in disguise

11:04 AM

For Sure...

11:10 AM

Wednesday, April 17



**T⋅⋅Mobile⋅**

This message was sent to you by a T-Mobile wireless phone.

---

**RL3** <lewissportsacademy@gmail.com>                                    Thu, Apr 18, 2024 at 6:26 PM
To: Alicia.williams@eeoc.gov
Cc: Tracy Lewis <ttmlewis2009@gmail.com>

Text messages between Ms. Heather Grant (Loan Officer) and myself...

Apr 10 2024 10:39am                                                                                      p 1

## Request for Verification of Employment

001241199

Privacy Act Notice: This information is to be used by the agency collecting it or its assignees in determining whether you qualify as a prospective mortgagor under its program It will not be disclosed outside the agency except as required and permitted by law. You do not have to provide this information, but if you do not your application for approval as a prospective mortgagor or borrower may be delayed or rejected. The information requested in this form is authorized by Title 38, USC, Chapter 37 (if VA); by 12 USC, Section 1701 et. seq. (if HUD/FHA); by 42 USC, Section 1452b (if HUD/CPD); and Title 42 USC, 1471 et. seq. or 7 USC, 1921 et. seq. (if USDA/FmHA).

Instructions:  Lender – Complete items 1 through 7. Have applicant complete item 8  Forward directly to employer named in item 1.
Employer – Please complete either Part II or Part III as applicable. Complete Part IV and return directly to lender named in item 2.
The form is to be transmitted directly to the lender and is not to be transmitted through the applicant or any other party.

### Part I - Request

| 1  To (Name and address of employer) | 2  From (Name and address of lender) |
|---|---|
| **Heirway Christian Academy**<br>**6758 Springs St**<br>**Douglasville, GA 30134**<br>**Phone  770-489-4392** | **Desiree Jacobs**<br>**SecurityNational Mortgage Company**<br>**900 Circle 75 Parkway, Suite 175**<br>**Atlanta, GA 30339**<br>**Phone  404-924-6148** |

I certify that this verification has been sent directly to the employer and has not passed through the hands of the applicant or any other interested party.

| 3. Signature of Lender | 4. Title | 5. Date | 6. Lender's Number (Optional)<br>001241199 |
|---|---|---|---|

I have applied for a mortgage loan and stated that I am now or was formerly employed by you. My signature below authorizes verification of this information.

| ˜ Name and Address of Applicant (include employee or badge number)<br>**Rodney Oliver Lewis**<br>**3753 Meridian Lane, Douglasville, GA 30135** | 8. Signature of Applicant |
|---|---|

### Part II – Verification of Present Employment

| 9. Applicant's Date of Employment<br>6-1-23 | 10. Present Position<br>Teacher, AD, Facilities | 11. Probability of Continued Employment<br>zero, none   Contract ends  5/31/24 (no renewal) |
|---|---|---|

| 12A. Current **Gross Base Pay** (Enter Amount and Check Period) | 13.  For Military Personnel Only | | 14. If Overtime or Bonus is Applicable, is Its Continuance Likely? |
|---|---|---|---|

12A checkboxes: __ Annual  __ Hourly  __ Monthly  ☒ Other (Specify)  __ Weekly  *Semi monthly*

| | 13. | Monthly Amount | 14. |
|---|---|---|---|
| Pay Grade | | | Overtime  __ Yes  ☒ No |
| Type | | | Bonus  __ Yes  ☒ No |
| Base Pay | $ | | 15. If paid hourly - average hours per week |

### 12B. Gross Earnings

| Type | Year To Date<br>Thru 5/31/24 | Past Year | Past Year | | | 16. Date of applicant's next pay increase |
|---|---|---|---|---|---|---|
| Base Pay | $30,000 | $25,000 | | Flight or Hazard | $ | |
| | | | | Clothing | $ | NONE |
| Overtime | | | | Quarters | $ | 17  Projected amount of next pay increase |
| Commissions | | | | Pro Pay | $ | NONE |
| Bonus | $2,600 | $2,500 | | Overseas or Combat | $ | 18. Date of applicant's last pay increase<br>6/1/2023 |
| Total | $32,500 | $27,500 | | Variable Housing Allowance | $ | 19. Amount of last pay increase<br>$5,000 |

20. Remarks (If employee was off work for any length of time, please indicate time period and reason)  Rodney missed 19(+) days over the allotted 5 day
Rodney Lewis took a lot of personal days that far surpassed the allotted days.  This does not include the normal holidays and breaks.

### Part III – Verification of Previous Employment

| 21  Date Hired | 23. Salary/Wage at Termination Per (Year) (Month) (Week) |
|---|---|

| 22. Date Terminated | Base _____  Overtime _____  Commissions _____  Bonus _____ |
|---|---|

| 24. Reason for Leaving | 25. Position Held |
|---|---|

### Part IV – Authorized Signature
- Federal statutes provide severe penalties for any fraud, intentional misrepresentation, or criminal connivance or conspiracy purposed to influence the issuance of any guaranty or insurance by the VA Secretary, the U.S.D.A., FmHA/FHA Commissioner, or the HUD/CPD Assistant Secretary.

| 26. Signature of Employer<br>*Beth Thomas* | 27. Title (Please print or type)<br>Ceo/owner | 28. Date<br>4-10-2024 |
|---|---|---|
| 29. Please print or type name signed in Item 26<br>*Beth Thomas* | 30. Phone No.<br>770-489-4392 | |

ICE Mortgage Technology, Inc.

Fannie Mae Form 1005   July 96
GVOE_S  0118
GVOES (POD)
04/08/2024 06:28 AM PST



Rodney Lewis <rlewis@heirway.org>

## Follow up

**Beth Thomas** <admin@heirway.org>                              Wed, Feb 28, 2024 at 9:22 AM
To: Rodney Lewis <rlewis@heirway.org>, Valerie Scott <vscott@heirway.org>, Tim Thomas <tthomas@heirway.org>

Coach Lewis,

I appreciate your willingness to share your thoughts as well as assist me as I investigate the details of this matter.

I have highlighted some points below from your email that I would like to use as a starting point. If you will please supply me with some specifics about the details below it will help with my investigation. Please have any of these individuals; (Heirway colleagues, supporters among parents, and coaches) to submit a written statement giving further details of what was communicated to them and I will be happy to follow up with them. They may email me directly at admin@heirway.org

"His persistent actions, which encompass speaking disparagingly about my character and abilities to various parties including Heirway colleagues, supporters among parents, and coaches, have been wholly inaccurate."

It will likely take some time to go through these items. In order to address your concern more promptly, I believe it is best to alleviate any further interaction between Coach Lewis and Mr. Thomas. I am going to implement the following effective immediately;
Mr. Thomas will not contact you directly through phone or email as I believe he has already put in place himself.
Furthermore, Mr. Thomas will no longer initiate contact with Ms. Scott concerning any matters involving you or your roles at Heirway.
Mr. Thomas's previous involvement in the details of your job description were initiated as a service to Ms. Scott due to his vast knowledge of how our athletic program and physical plant operate.
He is not compensated and only performed this task voluntarily as a service to the school and Ms. Scott. Moving forward from this point until the end of May, Mr. Thomas will no longer be involved in any aspects concerning Coach Lewis's roles at Heirway.

If Ms. Scott wishes to contact Mr. Thomas to gain input or information that involves anything with your roles at Heirway, Ms. Scott will be the one to initiate that contact. If Mr. Thomas is to provide any information to Ms. Scott at her request, Ms. Scott will document those responses and share them with me as the CEO so that I may have them for reference.

Although I will be looking into the details you provide, this immediate action should allow you to finish the remainder of the time left on your contract through May without any further interactions from Mr. Thomas.

All details of your roles will be under the direct supervision and direction of our Head of School, Ms. Scott. If she feels the need to contact me directly with any concerns, she may do so.

Thank you for your time.



Rodney Lewis <rlewis@heirway.org>

## Meeting / Mrs. Scott on February 26, 2024

Rodney Lewis <rlewis@heirway.org>                                    Mon, Feb 26, 2024 at 1:11 PM
To: Beth Thomas <admin@heirway.org>, Valerie Scott <vscott@heirway.org>
Bcc: Tracy Lewis <ttmlewis2009@gmail.com>, hubbnite@aim.com

Hello Mrs. Thomas,

I am writing to address a matter of grave concern that requires your immediate attention as the CEO of Heirway Christian Academy. Over a period of time, I have endured a distressing pattern of harassment, discrimination, disrespect and retaliation at Heirway Christian Academy, perpetrated by Mr. Tim Thomas.

His persistent actions, which encompass speaking disparagingly about my character and abilities to various parties including Heirway colleagues, supporters among parents, and coaches, have been wholly inaccurate. Specifically, it is crucial to highlight that Mr. Tim Thomas's detrimental conduct has unequivocally fostered a hostile work environment for me.

Mr. Thomas's behavior constitutes a clear violation of both professional conduct and legal standards. Despite my earnest efforts over the past several months to resolve any personal issues he has toward me directly with him, the situation persists unabated, leaving me with no choice but to escalate the matter to your attention.

The many incidents of harassment, discrimination, and subsequent retaliation I have experienced are well-documented, occurring via email as well as other communication channels within Heirway Christian Academy. Mr. Thomas's actions have had a profound and detrimental impact on myself as well as others who support Heirway (both Parents & Coaches).

As an employee dedicated to upholding the values and standards of Heirway Christian Academy, I find it deeply troubling that such behavior has been allowed to persist unchecked. It undermines the integrity of myself and threatens the well-being of all Heirway as a whole.

I implore you to take immediate and decisive action to investigate this matter thoroughly. It is imperative that robust measures are put in place to ensure the safety, employee rights, dignity, and protection of all employees. I stand ready to cooperate fully with your investigation and provide any necessary evidence to facilitate a swift and just resolution.

Thank you for your urgent attention to this matter. I trust in Heirway Christian Academy's commitment to maintaining a workplace free from harassment, discrimination, and retaliation. I look to hear back from you within 72 hours or I will be forced to consider outside counsel for resolution.


Coach Lewis
[Quoted text hidden]



Rodney Lewis <rlewis@heirway.org>

## Meeting / Mrs. Scott on February 26, 2024

**HEIRWAY CHRISTIAN** <heirwaychristianacademy@gmail.com>    Mon, Feb 26, 2024 at 12:16 PM
To: Rodney Lewis <rlewis@heirway.org>, Valerie Scott <vscott@heirway.org>

Dear Coach Lewis,

A recap from the meeting with Mrs. Scott this morning, February 26, 2024

Mr. Thomas will be taking on the responsibility of the buses and the Baseball program.   Mrs. Bettina Duff will be taking on the responsibility of the Archery program.

The Athletic Awards Banquet has been scheduled for Friday, May 17th.

Mrs. Scott asked Coach Lewis not to park in her parking space in front of the building.



**Mrs. Joy Spradling**
**Heirway Christian Academy**
**Office**



Rodney Lewis <rlewis@heirway.org>

## Re: Revised Notes from Meeting, Monday, February 26th

**Valerie Scott** <vscott@heirway.org>    Mon, Feb 26, 2024 at 12:43 PM
To: HEIRWAY CHRISTIAN <heirwaychristianacademy@gmail.com>, Rodney Lewis <rlewis@heirway.org>



**Valerie H. Scott**
**Head of School**
**Heirway Christian Academy**
**770-489-4392**
**www.heirwaychristianacademy.com**

On Mon, Feb 26, 2024 at 12:41 PM HEIRWAY CHRISTIAN <heirwaychristianacademy@gmail.com> wrote:

Dear Coach Lewis,

A recap from the meeting with Mrs. Scott this morning, February 26, 2024

Mr. Thomas will be taking on the responsibility of the buses and the Baseball program.   Mrs. Bettina Duff will be taking on the responsibility of the Archery program.

The Athletic Awards Banquet has been scheduled for Friday, May 17th.
Mrs. Scott conveyed to Coach Lewis that he is not to be the Point of Contact  for Mrs.Scott when she is absent or away from campus ( Mr. Thomas).  Mrs. Scott also discussed the issue of Coach not parking in her space per Mr. Thomas.



**Mrs. Joy Spradling**
**Heirway Christian Academy**



Rodney Lewis <rlewis@heirway.org>

## (no subject)

**Tim Thomas** <tthomas@heirway.org>                                    Thu, Feb 8, 2024 at 6:40 AM
To: Rodney Lewis <rlewis@heirway.org>
Cc: Beth Thomas <admin@heirway.org>, Valerie Scott <vscott@heirway.org>

Good morning,

I have no intent to be disrespectful or demeaning. My last correspondence was intended to be very sensitive due to your response from the previous email.

My role in being involved with maintenance and athletics was to relieve Ms. Scott of her already demanding responsibilities and to save time, however, at this point it appears that correspondence between you and myself is not proving productive.

At this point, I believe it is wise for us to turn over communication to Ms. Scott. Please contact her about any facility and athletic updates. All financial approvals will still need to go through Mrs. Thomas.

Moving forward, as of 6:30 am on February 8, 2024, please communicate all aspects of your responsibilities through Ms. Scott directly. Ms. Scott will contact Mrs. Thomas or myself for any outside work approvals and follow up with you to set up appointments for estimates, etc.

Likewise, if I see something that warrants attention in any area, I will share it with our Head of School and she can bring it to your attention. Hopefully this adjustment will alleviate any further frustration you are experiencing from my correspondence.
My apologies to Ms. Scott for added responsibilities, however, it appears necessary due to complications with our communication process.

Please forgive any unintended offense I may have caused you. Have a blessed day.


Timothy J. Thomas, Volitional Advisor
Heirway Christian Academy
[Quoted text hidden]



Rodney Lewis <rlewis@heirway.org>

## (no subject)

**Rodney Lewis** <rlewis@heirway.org>                    Wed, Feb 7, 2024 at 10:19 AM
To: Tim Thomas <tthomas@heirway.org>, Beth Thomas <admin@heirway.org>, Valerie Scott <vscott@heirway.org>
Bcc: Tracy Lewis <ttmlewis2009@gmail.com>, Roger Hubbard <hubbnite61@gmail.com>, Jamahl Wallace <jamahlwallace@aol.com>, Elliott Miles <emilesami@gmail.com>

Mr. Thomas...

Your disrespectful demeanor fails to diminish the validity of my perspective, regardless of your disdain, scrutiny, and lack of trust. As a dedicated member of the Heirway Christian Academy team, it's crucial for you to recognize the equal significance of everyone's responsibilities and priorities.

Your request, though seemingly urgent to you, was poorly communicated and carried undertones of disrespect toward a valued "employee" who happens to wear many hats at Heirway Christian Academy. It's essential to understand that my time and commitments are equally valuable.

Ms. Scott can confirm that on February 6th, my morning was occupied with obtaining a Covid test and conducting a tour for four families starting at 10:30 a.m., with my arrival not until after 9:45 a.m. Efforts aimed at promoting clarity and accountability warrant appreciation, not dismissal as negativity.

Unfortunately, your communication with me has raised personal concerns on multiple occasions, dating back to the first semester, yet my attempts to address them with you have gone unanswered. It is apparent that my perspective means very little to you, still I press on!

What specific updates regarding the areas surrounding your facility would you like?

Coach Lewis

"God delights when truth reigns in our inmost being (Psalm 51.6)"
[Quoted text hidden]



**Rodney Lewis <rlewis@heirway.org>**

## (no subject)

**Tim Thomas** <tthomas@heirway.org>                                    Wed, Feb 7, 2024 at 6:27 AM
To: Rodney Lewis <rlewis@heirway.org>
Cc: Beth Thomas <admin@heirway.org>, Valerie Scott <vscott@heirway.org>

Good morning Mr. Lewis,

I am uncertain if you meant to attach something to the last email, however, it simply states FYI....

My goal is to bring clarity on details that revolve around the unprecedented amount of cancelations we have had this season. To be clear, the correspondences I requested from you were from the follow-up confirmations that took place between Dec 14 and when you sent the newly confirmed schedule before the start of the new semester January. You mentioned that you had confirmed with everyone. I maintain a positive relationship with many of these schools, so if they are cancelling in January and February after confirming with you as recently as mid December, I would like to follow up with them personally as to why.
If it falls back on Heirway, I need to know that as well.

If my efforts in clarity and accountability to support Heirway Christian Academy are received by you as negative rather than their intent of good stewardship, then I will seek other ways to lift that burden from you.

I only expected it to take a few minutes of your period set aside for AD responsibilities yesterday as I hoped to review it on my lunch break at noon. Nonetheless, please don't bother with fulfilling my previous request about the confirmation correspondences that took place after the Holy Ground incident.
I will take it upon myself to follow up on these details as time permits. I don't have access to those conversations directly so it will take a little time and effort on my part, however, I will commit to this as it is important to address.

In the meantime, you will no longer need to worry with this request. Please just focus on the requests from before this week involving facilities, buses, etc. as I am still awaiting responses and follow up on some of those.

Have a wonderful day.


Timothy J. Thomas, Volitional Advisor
Heirway Christian Academy

[Quoted text hidden]



Rodney Lewis <rlewis@heirway.org>

## (no subject)

**Rodney Lewis** <rlewis@heirway.org>                                      Tue, Feb 6, 2024 at 12:46 PM
To: Tim Thomas <tthomas@heirway.org>, Beth Thomas <admin@heirway.org>, Valerie Scott <vscott@heirway.org>

Mr. Thomas, I have already supplied information with you each time a game was cancelled or rescheduled. I responded to your request accordingly by **being proactive** with each cancellation/reschedule. As an Heirway Christian Academy employee, I have employee rights to work in a professional and respectful environment like any other employee.

The parties included in my email are Heirway Christain Academy Coaches and my wife (Tracy). It is important that they understand the level of questioning I experience while managing the independent basketball program. This enables all parties to be informed.

Your statement pertaining to LSA is completely out of line. I would appreciate it if you allow me to focus on my classes/students and finish out my day in the most positive manner. The negative energy is draining and not productive.

Coach Lewis
[Quoted text hidden]



Rodney Lewis <rlewis@heirway.org>

## (no subject)

**Tim Thomas** <tthomas@heirway.org>                                    Tue, Feb 6, 2024 at 12:20 PM
To: Rodney Lewis <rlewis@heirway.org>
Cc: Beth Thomas <admin@heirway.org>, Valerie Scott <vscott@heirway.org>

Good morning,

I understand your concern and request, however, it is important that you understand that if I as the employer request information, I expect there to be a response with the requested information. Please remember that you are an employee of Heirway Christian Academy.  Regardless of my reasoning, I am requesting the information all the same.  Please submit the requested information.  Thank you.

Subsequently, my request has been copied to necessary Heirway employees.  You have included those not involved in this conversation as the Heirway contract is with you and not the other coaches.

It is important that you remember to separate your roles and relationship in LSA from your role at Heirway.  You have a contract with Heirway.

Timothy J. Thomas, Volitional Advisor
Heirway Christian Academy
[Quoted text hidden]



Rodney Lewis <rlewis@heirway.org>

## (no subject)

Rodney Lewis <rlewis@heirway.org>                                                    Tue, Feb 6, 2024 at 12:11 PM
To: Tim Thomas <tthomas@heirway.org>
Cc: Beth Thomas <admin@heirway.org>, Valerie Scott <vscott@heirway.org>, Tracy Lewis <ttmlewis2009@gmail.com>, hubbnite@aim.com, Jamahl Wallace <jamahlwallace@aol.com>, joellhilton74 <Joellhilton74@gmail.com>, Elliott Miles <emilesami@gmail.com>
Bcc: kajordan5542@gmail.com

Hello...

I appreciate your diligence and commitment to ensuring the smooth operation of the independent basketball program at Heirway Christian Academy. However, I must address the tone and urgency conveyed in your recent email. I have consistently communicated scheduling issues in a timely manner and shared ALL information with Coaches responsible for managing the teams.

It is necessary to highlight the remarkable success of the independent basketball program under my direction. We've exceeded expectations this season, establishing (5) teams allowing 50+ student-athletes an opportunity to compete. Further, each team has played an above-average schedule & number of games for the season. My Coaches and I have provided a rewarding experience for all middle and high school players.

Regarding your request for detailed correspondence regarding scheduling, I understand the importance of transparency and documentation. However, the demanding timeline and tone of your request are concerning but I will patronize this once. As mentioned in past communication to you, it's important to foster a culture of mutual respect and collaboration in our communications.

Additionally, I want to raise a question regarding the nature of your request. It's worth considering whether this level of scrutiny is warranted, especially considering that similar inquiries have not been made in the past. As I continue to navigate the complexities of managing multiple teams under the Heirway flagship, it's essential to approach challenges with understanding and cooperation.

Being responsible for scheduling, I acknowledge the frustration that may arise from canceled or rescheduled games from other schools, but it's crucial to address these issues constructively and within the framework of our shared goals. I have (already) shared each communication with you along with each Coach surrounding "those" schools that resulted in cancellation or rescheduling possibilities.

It is crucial to maintain professionalism and respect in our communications. My dedication to withstand the environment as well as the opportunity to finish my tenure at Heirway Christian Academy is important to me, but I will no longer adhere to unprofessionalism or disrespect in any capacity. **NOTE:** When I finish my classes today, I will forward the remaining schedule for all teams.

Coach Lewis



Rodney Lewis <rlewis@heirway.org>

## (no subject)

**Tim Thomas** <tthomas@heirway.org>                          Mon, Feb 5, 2024 at 8:58 PM
To: Rodney Lewis <rlewis@heirway.org>
Cc: Beth Thomas <admin@heirway.org>, Valerie Scott <vscott@heirway.org>

Coach Lewis,

After the situation at Holy Ground, you said you would confirm the remainder of the games and send a new schedule. You sent me a schedule saying those games were confirmed.

I need to see all correspondences between you and those schools confirming games of the latest schedule you sent. Regardless if they were through phone, email or text, I need to know the name of each individual you communicated with and what date they confirmed. If it was a text or an email, forward those to my email.  I need this information in my email inbox no later than noon tomorrow.

Timothy J. Thomas, Volitional Advisor
Heirway Christian Academy



Rodney Lewis <rlewis@heirway.org>

## Thank you for your support...

**Tim Thomas** <tthomas@heirway.org>                                    Thu, Jan 18, 2024 at 9:10 PM
To: Rodney Lewis <rlewis@heirway.org>
Cc: Beth Thomas <admin@heirway.org>, Stacy Barnes <finance@heirway.org>

Good evening,

I will need some time to reply in full to your email as there is a lot of information that I would like to address. The reality is that I am extremely overwhelmed with so much going on that replying in full will require more time than I currently have available.
I would like to finish out the rest of the basketball season for the next month before I respond. Between my day job, admin duties at Carroll County games, helping at Heirway, taking a gifted endorsement course, and my kids' practices and games, it will be mid February until I can breathe a little.
By then I will hopefully have the time needed to dedicate to the response as I believe it is important. At that time I will share many thoughts including why there have been reservations in following through more timely with your requests.

In the meantime, I wanted to let you know that you can expect a check written out to you tomorrow for the snapraise funds as well as gas receipts.

Have a good evening.


Timothy J. Thomas, Volitional Advisor
Heirway Christian Academy

[Quoted text hidden]



Rodney Lewis <rlewis@heirway.org>

## Letter of Intent

Beth Thomas <admin@heirway.org>
To: Rodney Lewis <rlewis@heirway.org>

Thu, Jan 18, 2024 at 10:42 AM

Good Morning Coach,

Ms. Joy put a letter of Intent in your box this morning. You may disregard it. Please put it back in my box. She is unaware of your email that you sent to resign in May. Sorry for the confusion. I also put the gate bag in your box for the game tonight. Also do you have an update on when Knine is coming out to do the repairs?

Thanks and have a great day!



Rodney Lewis <rlewis@heirway.org>

---

## Thank you for your support...

---

**Rodney Lewis** <rlewis@heirway.org>                                      Tue, Jan 16, 2024 at 5:58 PM
To: Tim Thomas <tthomas@heirway.org>
Cc: Tracy Lewis <ttmlewis2009@gmail.com>
Bcc: hubbnite@aim.com, Jamahl Wallace <jamahlwallace@aol.com>

Hello - I've attached an outlijane of each team as requested. However, I would like to address a few points regarding the management of the independent basketball program.

You mentioned that I have "management privileges" for overseeing the proceeds related to the independent program. It's important to clarify that Heirway is not the owner of the program. I established the independent program due to the insufficient number of students at Heirway to form a basketball team in any class division. My efforts alone have enabled your son/daughter to participate in basketball under HCA.

Without the inclusion of non-HCA students, there would be no Heirway Christian Academy basketball program. Despite my attempts to collaborate with Heirway management, I've faced challenges due to a lack of information.

I acknowledge that my approach may differ from Heirway's typical procedures. In my second year, I continue to face difficulties in obtaining necessary information. When you inquire about personal funds, it's important to understand that as the person responsible for the program, I do what is necessary.

Similar to last season, I started as Head Basketball Coach without a budget, uniforms, or clear direction. Therefore, questions about personal funds are not unfamiliar to me.

Contrary to information you may have received, I did rent a 15-passenger van for our trip to North Carolina in November 2023. However, I never sought reimbursement for the van I rented. The reimbursement request was solely for the gas used in the Heirway van driven by Coach Wallace, as both JV and Varsity Boys traveled to North Carolina.

Regarding upcoming travel plans, it is essential to note that we are scheduled to participate in the NACA Tournament. Last year, I drove the Heirway van to Dayton, TN, with your approval.

I have never requested funds from your finance department that were not generated by the basketball program. You've mentioned the "Heirway way" on several occasions, and I believe it should be clearly documented to avoid subjectivity when questions arise.

The accounting and management of the independent program are open for review by anyone interested, without any reservations.

**I would like to bring to your attention some concerns regarding what I perceive as poor business practices:**

- I submitted a gas reimbursement with original receipts on Nov 13th for the use of the Heirway van. This reimbursement is in addition to the $250.00 athletic fee, which is supposed to cover gas for players riding the van/buses. **(Nov 2023)**
- I submitted a gas reimbursement with original receipts for driving the bus to an away game and for HCA sweatsuits and basketball bags that I personally paid for. I paid for these items before our fundraiser check arrived. **(Dec 2023)**
- I submitted a gas reimbursement with original receipts for our travel from Douglasville to Tampa, FL. Coach Wallace drove the van with Varsity players to Tampa, while I met the team in Tampa. **(Jan 2024)**

I believe this addresses your questions thoroughly. I value the experience, and I firmly believe that business and professionalism should go hand in hand. At this point, I truly feel compelled to express the missed opportunities for collaboration and mutual benefit that could have transpired had you and I been able to work together "onsite" at Heirway Christian Academy.

The level of respect earned through years of transactional business could have been harnessed to elevate the experience for all parties involved at Heirway Christian Academy. Unfortunately, the inability to work together onsite has left a void in the potential synergy we could have generated.

It's akin to being blindfolded – a situation where the actual experiences I have endured on a daily basis while enhancing the educational and extracurricular experience for your students remain unseen. The untapped potential for positive impact and shared success leaves both of us at a loss.

I believe that our collaboration could have not only strengthened the educational environment but also fostered a deeper understanding and appreciation for the challenges and triumphs faced daily. The true value of my contributions and the dedication to enhancing the student experience might not be fully realized without firsthand, onsite collaboration.

I share this perspective not to cast blame but to underscore the untapped potential for a more robust and mutually beneficial partnership. The absence of our collaborative efforts onsite has limited the depth of understanding and recognition of the efforts invested. Moving forward, I remain committed to delivering the best possible experience for the students, despite the challenges faced in our current working dynamic.

Coach Lewis

On Tue, Jan 16, 2024 at 11:36 AM Tim Thomas <tthomas@heirway.org> wrote:
[Quoted text hidden]

 **HCA 2023-24 Basketball Program.pdf**
133K

# Heirway Christian Academy Independent Program

**Girls JV Roster:**
Makhayla Newton
Airis Alston
Lamya Horton
Lyric Smith
Janiya Jones
Stephanie Aguirre
Aubrey Jacobs
Presleigh Thomas – HCA Student

Independent Program Fee - $675.00
Collected - $0 outside student fee…
Non-Student Fee ($1750.00 )7 Players Paid
  -   Girls Non-HCA students fee was Sponsored
Total Funds Received- $1750.00

**7th/8th Grade Roster:**

| | |
|---|---|
| Chase Garrison – HCA Student | |
| Davis Ofoegbu – HCA Student | |
| Jonathan Beck – HCA Student | |
| Jackson Allong – Paid Full | $425.00 |
| Christian Williams – Paid Full (10% Discount) | $357.00 |
| Christauf Williams – Paid Full (10% Discount) | $357.00 |
| Colin Murray – Paid Full | $425.00 |
| Mika-Smith Brown – (Sponsored) | |
| Myles Bru (Replaced Donnell Parrish) | $425.00 |

Independent Program Fee - $675.00
Collected - $1989.00 outside student fee…
Non-Student Fee ($1250.00) 5 Players Paid
Total Funds Received- $3239.00

## HCA 2023-24 Season

# Heirway Christian Academy Independent Program

## 5th/6th Grade Roster:

James Jacobs – HCA Student
Myles Garrison – HCA Student
Charles Wynn – HCA Student
Myles Martin – HCA Student
Tate Thomas – HCA Student
Brantley Hibler – HCA Student
Jaycen Watkins – Just Paid the Non-Student Fee                              $0
Chanler Henry – Added to support team

Collected - $0 outside student fee…
Non-Student Fee ($250.00) 1 Player Paid
Total funds received - $250.00

## HS/MS Independent Program expenses:

Marketing/Promotional cost to solicit non-HCA players for program
15 Passenger Van (North Carolina) **Nov 10th-Nov 12th** - Enterprise
(6) Coaches Shirts & Team Shooting Shirts
(16) Coaches and Varsity Players Sweatsuits
(8) New Basketballs
(5) Coaches Clipboards & Team Books
(33) New uniforms purchased for Girls & MS Boys
(33) New Shooting Shirts for Girls & MS Boys
(45) NIKE custom Heirway Basketball bags
Tampa Bay Christmas Tournament Varsity Team Fee
Tampa, FL – Dinner for Varsity Team 12/29
Head Coach Wallace - 1000.00 payout (1st half of season)
Head Coach Miles - 500.00 payout (1st half of season)

*Still unresolved:* Snaprise (Program Fundraiser) – $1599.00

## HCA 2023-24 Season

Please submit an update for the financial status of the funds for which you are managing above and beyond the original athletic fees so that we can determine the response for your request for reimbursement. Thank you in advance.

P.S. As previously requested, please use the REPLY ALL option as to include our finance department. Thank you.
[Quoted text hidden]
[Quoted text hidden]



Rodney Lewis <rlewis@heirway.org>

## Thank you for your support...

**Tim Thomas** <tthomas@heirway.org>                                Tue, Jan 16, 2024 at 11:26 AM
To: Beth Thomas <admin@heirway.org>, Rodney Lewis <rlewis@heirway.org>, Stacy Barnes <finance@heirway.org>

Coach Lewis,

In regards to your request, I have spent a great deal of time and have done a great deal of research and digging and have arrived at a load of questions.

Long story short, the proposal you gave at the start of the basketball program this year included your request to hold and manage funds above the original athletic fees. Although I shared my discomfort with that method, I agree to try it so that you would not have to ask for funds from the school for things not covered by the athletic fees.

A rough estimate of the funds expected for you to manage totals over $15,000.
I realize you have shared that many students/families of non-Heirway students were unable to pay the full amount, however, it is unclear what amount you have actually collected or what has been spent.

Although you have been given management privileges of said funds, please remember that this is a new strategy and as mentioned from the onset, Heirway is still the owner of the program. Independent Basketball program means independent of a sanctioned league or association, not independent of Heirway management.

Again, the funds raised by the basketball program such as Snapraise and banner sales are in fact available for use on items and events outside of the original athletic fees and may be used for things like uniforms, hotel stays, overnight travel expenses, etc., however, when we release funds, we release to vendors directly. It is not typical for Heirway to reimburse individuals, specifically for large purchases. This does not look good to our accountant's office.

To be clear, I am not saying we cannot or will not do that this time, however, I am saying that before doing so we will need a report on what money you have collected above and beyond the base athletic fees that have been turned in and how it has been spent. Theoretically, it is very difficult to understand why you would have ever needed to spent personal funds considering the amount of proposed funds you should have available for use.

Additionally, it is my understanding that you didn't even rent a van for your two out of town trips, rather you took the Heirway van. First, that is one additional expense that you would have used the over and above management funds for that you clearly didn't use, but secondly, you were aware last year that we don't take our vans and buses on long trips. Even with our long, overnight school field trips, we rent vans and budget the files to cover expenses. I looked back over the emails between you and Mrs. Barnes discussing the importance of this and the process involved. Our school vehicles are only used for local games that do not require overnight stay. The only overnight trip we do with our vehicles is The Shocco Retreat, but it is not an overnight trip due to distance, rather the specifics of the event itself. If you plan to go to another tournament in February as stated on the schedule, you will be responsible to rent or provide transportation including gas. That was the purpose of the extended funds that you proposed to manage.
I understand if funding did not come in as planned, however, the financially responsible steps include a new plan before going through with events that are unable to be covered by lack of funding.

Please submit a statement showing what has been collected as well as what has been paid and the total balance of the funds for which you have been given management privileges. Once we look at those numbers we can better respond to your reimbursement request.

Please be advised that the funds raised are in fact available for things such as travel expenses, rentals, hotel, etc., however, if used for those things, the funds are not available for reimbursement.
Please also keep in mind that you asked for the banners to cover some of the athletic fees. This is not common practice for Heirway, however, we honored your request. That being said, the only funds left available are those raised through snap raise. All athletic fees go toward the predetermined costs such as local travel, referees, and your stipends for MS boys, JV girls, Varsity Boys and Athletic Director as stated in your contract. Most of these are processed in your biweekly paycheck with the exception of Varsity Coach stipend, which is given at the end of the season. You have elected to pay other coaches for those coaching positions out of the funds you are managing so those should be shown in your statement as well.



Rodney Lewis <rlewis@heirway.org>

## Employment Verification Request

**Rodney Lewis** <rlewis@heirway.org>                    Tue, Jan 16, 2024 at 7:38 PM
To: Stacy Barnes <finance@heirway.org>, Beth Thomas <admin@heirway.org>
Cc: Tracy Lewis <ttmlewis2009@gmail.com>
Bcc: hubbnite@aim.com

Hello, I am not sure who is responsible for this request. But, I am writing to request an employment verification statement from Heirway Christian Academy. As I am currently in the process of negotiating some commercial property, a formal confirmation of my current job title and salary would be greatly appreciated.

Below are my details for verification purposes:

Employee Name: [Your Full Name] Job Title: [Your Current Job Title] Salary: [Your Current Salary]

I kindly request that the statement include the aforementioned details and be officially signed or stamped by the appropriate authority at Heirway Christian Academy.

Your prompt attention to this matter is highly valued, and I thank you in advance for your assistance.

Coach Lewis



6758 Spring Street
Douglasville, GA 30134
www.heirwaychristianacademy.com

Fax: 770-489-4318
Phone: 770-489-4392
heirwaychristianacademy@gmail.com

January 17, 2024

This document is employment confirmation on the following:

Employee Name:  Rodney Oliver Lewis

Job Title: Secondary Teacher, Athletic Director & Facilities Director

Contract Term: 6/01/23 – 5/31/24

Annual Salary: $30,000

For any additional information regarding this employee, you may send a request
to finance@heirway.org

Sincerely,

*Stacy Barnes*

Stacy Barnes, Bookkeeper

Heirway Christian Academy

*678.838.3682 direct line*

*678.838.3684 direct fax*

The Spirit itself beareth witness with our spirit, that we are the children of God:
And if children, then heirs; heirs of God, and joint-heirs with Christ.



Rodney Lewis <rlewis@heirway.org>

## Thank you for your support...

**Rodney Lewis** <rlewis@heirway.org>                                    Thu, Jan 4, 2024 at 9:19 PM
To: Tim Thomas <tthomas@heirway.org>
Bcc: hubbnite@aim.com

Good evening,

I sincerely appreciate your prompt response and your effort to gather insights from Ms. Barnes. However, I need to convey a realization I've had regarding a significant disconnect in understanding the day-to-day operations, especially given your offsite position. I want to clarify that my reimbursement requests to Heirway have solely been for gas expenses related to van travel.

My intent in reaching out was simply to address the critical issue of my delayed reimbursement. Unfortunately, this year has been marked by a consistent pattern of unexplained delays. Before deciding on the next steps, I sought your assistance regarding my reimbursement, stressing that all necessary receipts were submitted a month ago.

There is no confusion about the receipts and items I submitted for reimbursement. The crux of the issue lies with the proceeds paid to Heirway (in early December) from the Snaprise Fundraising meant for the basketball program. I personally covered the costs for these items and am seeking reimbursement. Despite my previous attempts to resolve this matter by contacting Ms. Barnes and Mrs. Thomas, a solution remains elusive.

While I acknowledge I may not be qualified to question Heirway's financial track record, I feel compelled to highlight the delayed pattern I've experienced this year. Frankly, as a member of the management team at Heirway, a professional and direct conversation could have alleviated many sleepless nights pondering over communication challenges.

This experience has taught me valuable lessons. I will forward all communications to you surrounding the situation, hopefully this helps with you gaining a better understanding.

Coach Lewis

[Quoted text hidden]



Rodney Lewis <rlewis@heirway.org>

## Thank you for your support...

**Tim Thomas** <tthomas@heirway.org>                                          Thu, Jan 4, 2024 at 7:22 PM
To: Rodney Lewis <rlewis@heirway.org>
Cc: Beth Thomas <admin@heirway.org>, Stacy Barnes <finance@heirway.org>

Good evening,

Thank you for reaching out. I am already in the process of looking into this matter. I am uncertain when this was sent to Mrs. Barnes, however, the information was given to Mrs. Thomas only a few short days before the break. We are very intentional about taking advantage of the few breaks we have so I did not look over the information until January 2nd.

I reached out to Mrs. Barnes on January 3rd about setting up a time to speak in order to gain more details of the program financials as a whole. We are hoping to speak on Friday.

The reality is that this isn't as simple as requesting reimbursement. There are a lot of unanswered questions that require clarity before any money is released. For the record, Heirway has a tremendous reputation with a multitude of vendors and individuals who can attest that we are extremely expedient with paying bills and giving reimbursements when things are done in proper order. This is a unique situation as I am confident that someone would be very hard pressed to find any other individual who could say we aren't prompt with financial transactions. I will be able to expound upon that further once I speak with Mrs. Barnes as well as go back to emails including ones from last year that involve how the finances work in our athletic dept. One of these specifics revolves around the process and funding for purchasing uniforms.

Additionally, I am attempting to gain clarity regarding the fundraiser. Although fundraising is absolutely available for things such as uniforms, hotel stay, etc., we have always received bills that we pay to the vendor directly. Are you able to clarify what the funds from the fundraiser were used for and why it wasn't billed to the school and instead needing to be reimbursed to you directly? That will aide tremendously in gaining some understanding.

As you know from previous conversations, it is very unusual per Heirway procedures for us to ever issue a personal reimbursement without prior conversation and approval. Generally, as you recall from prior correspondences, if fundraising is needed for hotels, etc. the school sends the funds raised to the hotel, vendor etc. This appears to be the main delay in the process, there is much ambiguity. Again, I will hopefully gain more clarity once I gain financial details from my conversation with Mrs. Barnes.

The additional ambiguity in this is the fact that you have been given direct financial management of the fees that are above and beyond the original athletic fees so that you wouldn't have to ask for money from our finance office. I should have an idea of how much total you have collected and held onto for managing this season once I speak with Mrs. Barnes, however, it will be necessary to see how those funds were utilized in order to gain a full understanding of where we are.

Again, this isn't as simple as it should be if things were done according to how we have done them in the past. We have a stellar track record for a well oiled machine with baseball and archery and have for years. It is going to take a great deal of my personal time to gain all of the information necessary to get to the bottom of this situation, but I will commit to it nonetheless. I will have to sift through financials, past emails from this year AND last year in reference to procedures, etc. and projections of where we should be at this point. If you can provide the details of what you have collected and how it has been spent, I should be able to get back to you within one week.

My desire is to always do what is right and proper and I will always commit to putting in the work in order to see that come to fruition. I will commit the necessary personal time in order to bring all details to the surface in order to bring resolve to this situation. I will follow up as soon as I am able to do so. Again, if you can provide financial standings for the portion of Heirway's basketball funds that you are managing, it will likely expedite things more quickly. You can look forward to hearing from me soon. Thank you, have a good evening.

Timothy J. Thomas, Volitional Advisor
Heirway Christian Academy



Rodney Lewis <rlewis@heirway.org>

---

## Thank you for your support...

---

**Rodney Lewis** <rlewis@heirway.org>                                    Thu, Jan 4, 2024 at 5:44 PM
To: Tim Thomas <tthomas@heirway.org>

Hello - I am writing to urgently address a "very sensitive" and overlooked matter regarding a reimbursement request that was submitted through Ms. Barnes and Mrs. Thomas on behalf of the basketball program's fundraiser at Heirway Christian Academy.

Despite multiple emails sent during early December (before the holiday break), it has now been a month since the request was initially made to the financial department. Regrettably, there has been no acknowledgment or confirmation regarding the status of this reimbursement.

The delay in processing, compounded by the external channel through which the request was submitted, has significantly heightened the level of awkwardness and uncertainty surrounding this sensitive issue. I wish to emphasize the critical importance of prompt reimbursements for maintaining the operational efficiency of the program.

Given the urgency and the fact that this matter seems to have been overlooked, I respectfully request your immediate assistance in expediting the processing of this reimbursement. Timely action is imperative to support my ability to manage the program's finances efficiently and ensure the seamless continuation of activities.

I understand the demands of work schedules and the challenges it may pose from time to time. However, I have patiently persisted for weeks. Your prompt attention and support in resolving this issue would be immensely appreciated, acknowledging the urgency and sensitivity of the circumstances.

Thank you for your understanding and swift action in addressing this overlooked matter.

Coach Lewis

Dear Ms. Scott (Head of School),                                    12/11/2023

It is with a heavy heart that I write to inform you of my intention to resign from my roles as Teacher, Athletic Director, and Facility Manager at Heirway Christian Academy, effective May 2024. This decision has not come easily and stems from profound reflection on my professional objectives and values.

My tenure at Heirway has been an immensely valuable experience, marked by a strong commitment to the growth and success of our institution. I've diligently overseen the welfare of Heirway students, program effectiveness, and facility maintenance, consistently aligning with Heirway's mission.

However, amidst these roles, I've encountered challenges that have affected my ability to align my aspirations for impactful student development with the current environment. These challenges primarily arise from the misunderstandings entrenched within the administration structure.

One notable difficulty I've encountered involves insufficient communication from both the predecessor and the co-owner, which has left me without explicit guidance or direction. Yet, in addressing issues that required resolution, I've acted responsibly making decisions in the best interest of Heirway Christian Academy and its students.

Nevertheless, I've found it disheartening to face criticism without clear directives. The absence of guidance followed by critique for actions taken to solve problems feels inherently unfair, straining my commitment to serving the families that trust Heirway Christian Academy with their children.

Furthermore, the lack of professional trust and disconnect between departments, alongside concerns about delayed financial reimbursements, have added to these challenges. Regrettably, recent reimbursements have not been processed promptly, impacting both my professional responsibilities and personal life.

My decision isn't about assigning blame but stems from a misalignment of values and expectations. I hold Heirway Christian Academy in high regard and cherish the relationships formed and the lessons learned during my tenure. I want to extend my sincerest gratitude to you, Ms. Scott, for your support in entrusting me with leadership responsibilities and allowing me to strive for better outcomes.

I am deeply thankful for the parents who have shown unwavering support and appreciation for my involvement with their students. Despite my impending departure in May 2024, my commitment to positively impacting young lives remains steadfast, albeit in a different capacity.

As I transition over the next five months, I want to assure you of my dedication to fulfilling my remaining contractual obligations during the second semester with the utmost professionalism. My priority remains to enhance the experiences of both the staff and students.

Subsequently, after discussions with my coaching staff and supporters, I regret to announce that our Independent Basketball Program will cease operations at the conclusion of the 2023-24 basketball season at Heirway Christian Academy.

Thank you for your understanding and support during this challenging decision. I extend my heartfelt wishes for the continued success and prosperity of Heirway Christian Academy, its faculty, and its students.

Sincerely,

Rodney O. Lewis

July 12, 2024

U.S. Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama Street, SW
Suite 4R30
Atlanta, GA 30303

RE: Charge of Discrimination No. 410-2024-07847

I write to address the position statement submitted by Heirway Christian Academy Inc. in response to my charge of employment discrimination. The Academy's submission is riddled with falsehoods and misrepresentations that aim to obscure the truth and undermine my legitimate claims. I assert that Heirway engaged in discriminatory practices and retaliatory actions against me in violation of Title VII of the Civil Rights Act of 1964.

## False Assertions and Misleading Statements

**Resignation Submission:** Contrary to Heirway's claims, I submitted a resignation letter on December 11, 2023, citing intolerance and misalignment. At no point did I withdraw this resignation. Heirway's assertion that I did so is a blatant fabrication intended to mislead the EEOC.

**Employment Status:** I was never terminated by Heirway Christian Academy. My employment concluded at the end of the school year, based on my submitted resignation. No formal notice of termination was ever issued to me. The claim that I withdrew my resignation is false and deceitful, intended to undermine the legitimacy of my discrimination claims.

## Adverse Employment Actions and Retaliation

**Discriminatory Treatment:** After my resignation in December 2023, Mr. Thomas subjected me to increased scrutiny and unreasonable demands not imposed on my colleagues. This intensified after I reported discrimination, clearly indicating retaliatory motives. Heirway's claim that I did not experience adverse employment actions is false. These actions were direct retaliation for my discrimination complaint, which is prohibited under Title VII.

**Specific Incidents Illustrating Retaliation:**

**Treatment by Mr. and Mrs. Thomas:** Since December 2023, Mr. and Mrs. Thomas have treated me with blatant disregard.  They avoided face-to-face communication, excluded me from meetings, and neglected direct interaction regarding school matters, thereby fostering a hostile work environment.

**Reduction of Responsibilities:** On February 26, 2024, the Head of School, Ms. Scott, informed me that Mr. Thomas directed her to strip me of several key responsibilities without any explanation or cause.  This action was clearly part of a personal vendetta against me.  Throughout my tenure at Heirway Christian Academy, I never received a performance review, making these unjustified reductions even more unjust and highlighting the retaliatory and discriminatory nature of their actions.

**Exclusion from Critical Communication:** As an Administrator at Heirway Christian Academy, I was deliberately excluded from an all-employee Zoom call where the school's closure was announced.  This exclusion, a clear act of discrimination and retaliation, prevented me from receiving important information and was a deliberate attempt to undermine my role and authority.

**Deactivation of Employee Badge:** In mid-April 2024, my employee badge was deactivated without notice, preventing my weekend access to the school and causing distress.  Despite my attempts to seek clarification from Mrs. Thomas, I received no communication or justification for this action.  This unjustified measure was clearly intended to obstruct my duties.

**Defamation and Misrepresentation**

**Negative Statements to Creditors:** Heirway's assertion that negative statements to a potential creditor are irrelevant is incorrect.  Mrs. Thomas provided incomplete information on a mortgage loan employee verification form, omitting the school's impending closure and my resignation.  This omission misled the creditor and damaged my credibility and financial stability.  According to the Fair Credit Reporting Act (FCRA), employers must ensure that the information they provide about current or former employees is accurate and complete.  Mrs. Thomas's actions did not comply with these legal standards, resulting in an unfair portrayal of my professional situation.

**Addressing False Claims**

**Attendance Policy:** Heirway's claims regarding my alleged disregard for the attendance policy are completely baseless.  Every day off I took was properly approved by the Head of School, Ms. Scott, and the School Secretary, Ms. Joy, in full accordance with established protocols.  These unfounded accusations are a clear and calculated attempt to misrepresent my professional conduct and damage my future employment prospects.  By falsely portraying me as someone who disregards institutional policies, Heirway is deliberately trying to harm my credibility and financial standing.  This is yet another blatant example of the discriminatory and retaliatory environment perpetuated by Mrs. Thomas, CEO of Heirway Christian Academy.

**Unsubstantiated Claims and Investigation**

**Salary Discrepancy:** The claim that I was not paid less than my white colleagues are entirely untrue.  Despite shouldering significant responsibilities and duties, my compensation did not align with the workload I managed, highlighting discriminatory practices.  This clear pay disparity underscores the presence of discriminatory employment practices at Heirway Christian Academy.

**Retaliation:** Under Title VII, retaliation against an employee for filing a discrimination complaint is explicitly prohibited.  Following my complaint, I endured a heightened level of scrutiny, exclusion from critical meetings, and malicious gossip aimed at tarnishing my reputation among colleagues and within the broader Douglasville community.  Additionally, there was a deliberate attempt to undermine my credibility with unsolicited negative statements to potential creditors.  These actions created a hostile work environment and are unmistakable forms of retaliation.  Heirway Christian Academy's behavior constitutes clear and unlawful retaliation for my discrimination complaint.

**Evidence of Discrimination**

**Supporting Evidence:** I provided multiple instances of discriminatory behavior from Mr. Thomas, reported both verbally and in writing.  The administration dismissed my claims without proper investigation, failing to create a safe environment for employees to support my assertions.  Under Title VII, employers are legally required to investigate employment discrimination complaints thoroughly and in good faith.

**Communications with Mr. Thomas:** Mrs. Thomas was fully aware of Mr. Thomas's disrespectful and unprofessional behavior towards me but failed to take any appropriate action. Despite my repeated complaints and documented incidents, she chose to ignore the issue. I am including several communications as evidence to substantiate my claims.

**Employee Rights for Those 50 or Older in Georgia:** Employees aged 50 or older in Georgia are entitled to protection from discrimination under the Age Discrimination in Employment Act (ADEA). Employers must demonstrate the highest level of professional integrity in their daily business activities on behalf of the citizens of Georgia.

**Differential Treatment and Isolation:** Unlike my colleagues and other Administrators, I, as the only Black male at Heirway Christian Academy, was subjected to discriminatory treatment, isolation, and a profound lack of respect from the Thomases. While other employees were included in vital communications and meetings, I was deliberately excluded, signaling a clear racial bias. My responsibilities were unjustly reduced without any explanation, and I was treated as invisible, with the Thomases avoiding all direct communication with me. This differential treatment underscores the racial discrimination I faced, highlighting the pervasive and unjust environment fostered by Heirway Christian Academy.

**Lack of Respect and Witness Accounts:** As the only Black male at Heirway, and considering the numerous roles I fulfilled, I deserved better treatment from the CEO. The Thomases consistently displayed a lack of respect towards me, often refusing to speak to me at Heirway events. Many of my colleagues witnessed this behavior, and several supported me privately, acknowledging the unjust treatment I received. This stark contrast in treatment created a hostile work environment and underscores the discriminatory practices at Heirway. The disregard and disrespect I faced are clear indicators of the racial bias present within the institution.

## Emotional Distress and Professional Impact

Mr. Thomas, who acted as my supervisor, did so remotely and was never onsite. Consequently, he had no direct insight into my performance and relied solely on his opinion. This situation was inherently unfair from the beginning. I was promoted and placed in roles aimed at supporting the school's objective of increasing minority representation, yet I faced discriminatory treatment and baseless evaluations from someone who had no firsthand knowledge of my work or direct results.

The discriminatory treatment I endured at Heirway inflicted profound emotional distress, affecting every aspect of my life. I frequently sought solace and advice from my family, friends, colleagues, and even parents of students at Heirway Christian Academy. Initially, I underestimated the full extent of the anguish I was subjected to, but its toll became increasingly apparent as I struggled through these challenging circumstances.

In closing, Heirway's statements are laden with falsehoods and intentional misrepresentations. The well-documented discrimination I faced stands in stark contrast to their baseless claims. I trust that the EEOC will meticulously scrutinize these discrepancies and initiate a thorough investigation. I steadfastly affirm that Heirway Christian Academy systematically engaged in racial discrimination against me and retaliated for my courageous stand. I insist on a rigorous inquiry to unearth the truth and ensure justice prevails.

Enclosed are a few names and titles of colleagues and teachers who can provide crucial insights into Heirway's discriminatory practices. I welcome EEOC to contact each staff member at Heirway Christian Academy in relation to my character and my employee behavior while being an Administrator at Heirway. Furthermore, I have attached documents from Ms. Scott, the Head of School, corroborating my experiences and offering essential context. I urge the EEOC to recognize these falsehoods as part of Heirway Christian Academy's broader pattern of discriminatory and retaliatory conduct.

Sincerely,

Rodney O. Lewis
4047291903